I will call the first case, United States v. Brandon Jones, and invite counsel to begin. Thank you, Your Honor. Good afternoon. May it please the Court. I'm Lucas Anderson here for the appellant, Brandon Jones. The conviction for passing fictitious government financial documents under Section 514A of Title 18 was not supported by legally sufficient evidence. The District Court instructed the jury that a fictitious instrument is, quote, a bogus financial document made to look like a real financial document when there is no such genuine financial instrument. So given that instruction, given all of the uncontradicted evidence that there are genuine versions of government travel requests and purchase orders, and in light of all the evidence about people accepting Jones' documents and believing they were genuine travel requests and purchase orders, the count three verdict should be vacated. And I'll just note that the government's now arguing that Jones' documents looked different than their legitimate counterparts and that they were purportedly issued by non-existent entities, and so they're not counterfeit within the meaning of 472, which is a counterfeiting statute. But during their closing argument, the government argued that the documents Jones passed, quote, appeared to be legitimate purchase orders and GTRs, and that they, quote, looked official on the receiving end. Now on appeal, they're arguing that- I'm sorry, so you think that they were counterfeits, not false or fictitious, is that right? Is that what you just said? Correct. Yes. So now on appeal, the government is arguing that the exact opposite conclusion was proved beyond a reasonable doubt. And so I think that under just the jury instruction itself, a reversal is required. But you said a moment ago that the court instructed the jury that a false or fictitious document is a bogus financial document that's made to look like a real one. So isn't a government purchase order issued by the Office of the Commissioner for Burns a bogus financial document? And as you just said, it was made to look like it's a real one. So why doesn't it meet that definition? It was because it was issued as a government purchase order or a government travel request, depending on which incidents we're discussing here, because there are such genuine financial government documents as GTRs and- But this one was bogus, right? I mean, this one is a false one, right? So a government purchase order or travel request issued by the Office of the Commissioner for Burns, that is a false document, is it not? That is a false document. I'm sorry, if we're debating the specific definition of fictitious, though, here, I mean, everyone, no, we're not saying that any of these were legitimate documents that were going to be paid for, so they're all false. Yes? Counsel, this is Judge Fuller, doesn't the statute say false or fictitious? Yes, that's correct. And, you know, the statute has been discussed in all of the cases that we cited to, I think, most extensively in the Ninth Circuit Howick case. Now, the Eleventh Circuit was the only one of those courts of appeals to address the statute, which found that the statute was, one, unambiguous, and two, that those two- Well, before we talk about the Eleventh Circuit, the Howick case that you just mentioned, so the false documents that issued there, they were false Federal Reserve notes, right? I think most importantly for this appeal, the documents in the Howick case were the false silver and gold certificates, because in those cases, the defendant in that case made the same argument that the government's making here, which is that those documents were so obviously fake that they couldn't be prosecuted under Section 472, the counterfeit statute. But the court in that case said, you know, even if there were obvious, you know, differences between the genuine versions of those documents and the ones that the defendants had, they may have been apparent to a skeptical examiner trained in the detection of counterfeit currency. What matters is whether an ordinary person, not a GSA investigator, whether an ordinary person who had no grounds for suspicion would accept those as true. And here, the evidence was overwhelming, except for one American Airlines employee. All these people in many different areas of industry services- Well, but excuse me, Mr. Anderson. Mr. Anderson, this is Judge Lynch. The statute, neither the statute nor the judge's instruction talks about a test about what an ordinary person might think, right? That's not from the statute, and that's not from the judge's instruction. Correct. That discussion of what an ordinary person would think and what the legislative intent was and what kind of victim the statute was intended to address, that all came up because those courts found that the statute was ambiguous. And first of all, I think any ambiguity in the Well, first of all, I'm not sure there is any ambiguity in the statute, but that's a separate issue because the government has sort of waived, as far as I can tell, has waived any argument that this statute could apply to something that would be prosecutable under Section 472. But even taking the Ninth Circuit's approach, for example, the Fifth Circuit in Morganfield, which follows the Ninth Circuit's general approach to this, applied this statute, Section 514, to government checks on the theory that they were drawn on a non-existent account and therefore were totally bogus. Why isn't this like that? That is to say something that, in the words of the statute, purports to be an actual security or financial instrument, but in fact is not because it's drawn on a non-existent entity. You're citing the Morganfield case specifically, and that's where the Fifth Circuit said that a check, even if it is worthless, is not, as a matter of law, a false or fictitious instrument. The circuit also noted the statute is not an modified at all, right? They were totally genuine checks that were just written to fictitious persons. But I think maybe the clearer analogy is the Williams case from the Eleventh Circuit, where the court says that when you have a check, if it has a modified serial number so that it's being drawn on a non-existent account, it still counts as a fictitious or a false document, right? Correct. Yeah, correct. That's under the Eleventh Circuit's approach, which was... Right. And the Ninth Circuit, in the Howitt case, I understand that you're more interested in the gold and silver certificates piece, but that's about the counterfeiting statute. But the Ninth Circuit does apply 514 to the Federal Reserve notes, right? And so we know that Federal Reserve notes exist, right? They just don't exist in the $100 million or $500 million denominations that the defendant in that case had made them out to be. So if we have cases from other circuits that say, well, you have a check, the check exists, but it doesn't exist with that particular routing number. And you have the Ninth Circuit saying, well, Federal Reserve notes exist, but they don't exist in that denomination. And both of those cases, they apply the false or government purchase orders or travel requests exist, but they don't exist for an entity called the Office of Commissioner for Burns. Aren't those all just all put together? I'm sorry, can you repeat that last sentence? Well, it just doesn't seem to me like there's any contradiction between what the District Court did here and what the Ninth Circuit did in Howitt and what the Eleventh Circuit did in Howitt. Well, by finding that multi-million dollar Federal Reserve notes, which just do not exist, is different than saying that government travel orders and government purchase orders do not exist. Now, I understand that the government purchase orders and the travel requests here said different things on them, but that does not mean that they were not presented as, made to appear as, and were usually accepted as legitimate government travel requests or purchase orders. So you're saying the Ninth Circuit can say, all right, Federal Reserve notes exist, but they don't exist in multi-million dollar denominations, and so therefore it's a false or fictitious document. But if they had said, but if the way the document was rendered false is it was a Federal Reserve note, not in a different denomination, but purported to be issued by a different country, then all of a sudden it would no longer be, it would no longer be a false or fictitious document, but only a counterfeit one. Is that your argument? No, I think the Howard Court made a more apt distinction when it said that a counterfeit phony $100 bill, which, you know, it could have wrong serial numbers, it could have, as the government notes in their brief, it could have like a Secretary of State signature. It's whether somebody who's being presented with it, a reasonable person, looks at it and says, this is obviously something phony. Anyway, the Ninth Circuit made that distinction between a Federal Treasury warrant. Now, you can say that's VIFTA, but it supports their, you know, their distinction between the gold and silver certificates and the multi-million dollar Federal Reserve notes that were presented in that case. And so I think... But you don't dispute that, you don't dispute that Federal Reserve notes exist, right? There are legitimate documents called Federal Reserve notes, right? Right. So what made the, so what made it false or fictitious in that case was not that it was a type of document that doesn't exist. It was that it was in a denomination for which the type of document hasn't been issued. Correct. If somebody presented you... So in our case, we have a government, a purchase order. There are such things as purchase orders, but not on behalf of entities called the Commissioner for Burns. So if a different denomination on a Federal Reserve note can render something false or fictitious, why can't a false issuing entity or a false government entity on the fake government purchase order render that false or fictitious? Why is that different? Because it goes, again, to the victim who would be accepting that. If you get a $20 bill, looks normal, except for it is issued by a different entity, such as the Secretary of State. It has a Secretary of State signature. You don't look closely for the Treasury Secretary's signature. But if somebody hands you a $13 bill, that's a different matter entirely. And that would be in line with the distinction that the Howard Court was making. But Mr. Anderson, I'm sorry, the statute here talks not just about a false or fictitious instrument, but ones that appear, represent, purport to be an actual security or other financial instrument issued under the authority of the United States. What could that mean? How would you have a document that purports to be an actual security issued under the authority of the United States without bearing some sort of resemblance to something that is a security or financial instrument issued under the authority of the United States? Well, the case law is the analyze the use of the word actual in the statutes. And that's where they have arrived at this distinction between what is a fictitious instrument and what is a counterfeit instrument. But you know, this statute was intended to plug a loophole. And it seems to me you're just shifting the loophole to a different situation. Right? You're saying there's a class of documents that could well be neither efficient or foul. It's I mean, this, if this particular instrument were prosecuted under a counterfeiting statute, wouldn't there be a perfectly plausible defense that this looks nothing at all like an actual government purchase order, which is in itself a rather rare and unusual document. And therefore, it's not really a counterfeit, because it's really bogus. No, if this was, if this was prosecuted as a counterfeit, then a defendant might raise the same defense that the defendant and how it did, and say, these are obviously fake, they can't be prosecuted under the statute. And I think a court following how it would say no, those defects in the certificate, you know, they're not apparent to a ordinary person who has no grounds for suspicion, even though they might be apparent to a skeptical examiner. I'm not sure this is a case of something, you know, when you have a counterfeit $20 bill or $100 bill, some of them are very good and would require an expert to tell the difference. Some of them are fairly apparent to, you know, the cashier calls over the manager and the managers had some rudimentary training and said, this is obviously fake. There are there are all kinds of varieties there. I think it's sure somebody, some fool might take this and and think it's a real a real document. But that person would have to think there is such a thing as the Commissioner of Burns. Wouldn't he or she? No, I think he or she would have to believe that there is something that exists that's called a government purchase order or a government travel request. And many, many, many people in this case did. The American Airlines to the tune of $100,000, according to government kept accepting his government travel request. And so I still I think that the analogy that was being made and the prior question is is quite on point with what the defense is. Unsuccessful defense was in Howick where he said this is obviously fake. There was an oversized portrait of Ben Franklin. It was printed on regular paper instead of the cloth paper hybrid. It wasn't engraved properly. It's not as if this was a well done forgery in the Howick case. And it's not as if it's a well done forgery here. Councilor, your time has long since expired, but you have reserved two minutes for full rebuttal. We'll hear from the government. Thank you. May it please the court. My name is Kirsten Fletcher, and I represent the United States on appeal as I did a trial below. The only issue for the court to decide here is when whether any rational juror could have found that Jones passed these fictitious financial documents. The appellant faces a heavy burden and the court must draw every inference in favor of the government. More specifically, Ms. Fletcher, the issue is whether any reasonable juror could have found that these were fictitious in the definition that the government requested the district court to give, right? That's correct. And the definition that the government requested and that the parties are in agreement was an appropriate instruction is that the documents must constitute bogus financial documents made to look like a real financial document. And that's precisely what many, many documents created and passed by Jones did. He created Office of the Commissioner for Special Appendix, the Supplemental Appendix. What those documents did is they were of the type of documents that they purported to entitle the recipient to payment and ostensibly were made on behalf of an entity, the Office of Commissioner for Burns and intergovernmental organization. Aren't counterfeit documents also bogus financial documents that are made to look like real documents? They are. So is every counterfeit document also a false or fictitious document? No. There may be some area of overlap between documents. There are certain financial documents that could support a conviction for counterfeiting or could support a conviction for fictitious documents, but not every document... You didn't charge this defendant with counterfeit GCRs. No, we did not. The government charged this defendant with passing fictitious obligations, and that's because... Well, for several reasons, but that's because those are the types of documents he passed. As the court pointed out just a few minutes ago, there is no entity called the Office of the Commissioner for Burns that is authorized to issue payment documents on behalf of the United States government. There is no... Because Mr. Jones' counsel just said that he thought that these documents violated the counterfeiting statute, but your position is that they do not violate the counterfeiting statute. Is that right? My position is that very likely under the Parr case and under the discussion in the Howick case on the similitude requirement for Section 472 counterfeiting, very likely the documents that Jones passed would not fall within the counterfeiting statute, but the court really need not reach that issue here because the question isn't whether they could also be... They could also support a counterfeiting conviction. The question is whether they were sufficient to support a fictitious obligations conviction. So it's not your... For good reason. Excuse me, Ms. Butchers, Judge Lynch. It's not your position that the counterfeiting statute and Section 514 are mutually exclusive. They are not mutually exclusive. And there's some support for that conclusion in cases in the circuit that have looked at these two statutes without specifically resolving the issue that the appellant raises here. One example of that is United States v. Gronach, that's 386F3-404. That's an opinion from the circuit in 2014. In that case, the defendant's conviction was affirmed over an unrelated challenge. But the facts of that case are that the defendant pleaded guilty to passing both a counterfeit check and attempting to pass a fictitious financial obligation. But the instrument that was at issue there was the same instrument. So there is some overlap or some area where a particular instrument may be conceived as both counterfeit instrument and a fictitious obligation. When would a counterfeiting instrument not be fictitious, if you're saying a fictitious instrument is anything that's bogus that is made to look like a real one? Well, if the court looks to the analysis in Howick, the distinction that's drawn in Howick, I think, is instructive. A counterfeit obligation, as described in Howick, is one that is designed to appear similar to an existing financial instrument. There are certain categories of fictitious obligations that are designed to appear to be financial instruments generally, meaning not similar to any existing financial instrument. It sounds like what you're saying is that the category of false or fictitious documents is a larger category. So not everything that is false or fictitious is necessarily counterfeit. But it sounds like everything that is counterfeit is necessarily false or fictitious, as you've just described it. Is that right? I'm not sure that's right. As I sit here, I can't think of an example of a document that would be counterfeit and not false or fictitious. But I think that question is sort of beyond the scope of the court's inquiry here. The court really just needs to assess where the documents that Jones passed fall on the counterfeit and fictitious obligation scale. And I think the discussion that was the discussion earlier with respect to the Williams 11th Circuit opinion and the Morgan Field Fifth Circuit opinion really, really shows where that line is. Both of those cases, as the court noted, involved checks, but the Fifth Circuit case involved an altered, an altered check that was, and the court explained it was an actual negotiable instrument. It was issued by a legitimate bank. There was an actual checking account associated with the check, but the check itself had been modified. And so that check could not form the basis for a fictitious obligations conviction. So I'm following the instruction. Opposing counsel, Mr. Anderson said that the government changed this theory between the trial and the appeal. Is that correct? No, it's not correct, Your Honor. I think he based that argument on statements made by the that the GTRs and the purchase orders passed by Jones were fake. Those documents were fake, but they were fake in the sense that they bore a family resemblance to genuine financial instruments, but they were not genuine financial instruments. The government never took the position. They were fake and also fictitious or just fake? Your Honor, I believe in our closing arguments, we used the word fake, but the instruction, the instruction used the phrase false or fictitious tracking the statute. So the court, the statute, the statute says false or fictitious, but the, you know, the superseding indictment says false and fictitious purchase orders and government travel requests. So do you think that there's a distinction between false and fictitious or that everything that's false and fictitious and vice versa? I don't know, as I sit here, why the indictment says and. Isn't there authority, excuse me, Ms. Fletcher, isn't there authority that an indictment that says and means or? I mean, it's very common to say these things, false and fictitious. I don't think there's a language of indictments that says that and subsumes or in that context doesn't make a lot of grammatical sense, but that seems to be a drafting convention. Yeah, that's very interested in the disjunctive use of or they commented on that in Williams. Yes, Judge Lynch, that's right. And the government's practice is to plead false or in the conjunctive in order to ensure that the defendant is on notice of the different statutory basis. Is there a difference regardless of the status of the indictment? Is there a difference with something false but not fictitious and vice versa? Not that I'm aware of. Certainly not as relevant to the documents that Jones passed. The government's position is that those documents were both false and fictitious. And the jury at least concluded that they were either false or fictitious such that a conviction was returned on that count. They didn't have to, the jury didn't have to decide whether they were false or fictitious. Is that correct? That's correct. There was no special ballot. Correct. That's correct. And just to return to one point that was made when Mr. Anderson was speaking, as the court correctly noted, the purpose of Section 514 is, as evidenced by the legislative history, designed to sort of plug the loophole that was left open by the counterfeiting statute. And so if the court is to accept the argument that the appellant is now making, what that would, what that would in practicality do is create a gap between documents that could be considered counterfeit documents and those that could be considered fictitious obligations. But your argument seems to suggest that what the false or fictitious statute does is subsume the counterfeiting statute. So everything that's a counterfeit instrument is also false or fictitious. So could we understand Congress to be just totally subsuming the counterfeiting statute with a whole new category that is broader but includes everything that can be prosecuted under the counterfeiting statute? I think if the court looks to the Morganfield decision, that at least includes some category of documents and discusses a certain category of documents that would be classified as counterfeit but would not qualify as fictitious obligations. Those were the actual negotiable instruments issued by legitimate banks where actual checking accounts existed. So there's a lot of... But they were certainly false. They were certainly false, issued on false account numbers. Isn't that correct? They're certainly false, but at least... No, no. In Morganfield, they were issued on genuine account numbers, right? So Williams is false account numbers. But in Morganfield, those are genuine checks for genuine accounts. They're just written to fictitious people, right? Is that... That's correct. The Morganfield... So are those counterfeit instruments if they're actually genuine checks but somebody wrote it out to a fake person? The Fifth Circuit in Morganfield says yes, that they are legitimate checks, but because they are forged by the defendants in that case, they would potentially qualify as counterfeit obligations but not fictitious obligations. Whereas, as the court just pointed out, the checks in Williams were entirely concocted. They were checks that contained fake payers and were drawn on accounts that did not exist. And what the Williams decision makes clear and what the Sixth Circuit decision in Anderson makes clear and Howick, as we were discussing earlier, makes clear is that each of these cases involves a circuit affirming a fictitious obligations conviction where the conviction is based on the defendant passing a type of document that generally exists. So Anderson involved site the Ninth Circuit case and Howick involved federal reserve notes. These are types of financial instruments that do exist. They perform the same function as legitimate payment documents, but they were still... Convictions were still affirmed based on defendants passing those types of documents because there were indicators in the documents that they were not otherwise legitimate. And so the same is true here where Jones passed a number of different types of false documents, purchase orders, government transportation requests, other payment documents that may involve some of the same generic words like GTR or purchase order as other documents, but do not purport to be drawn on legitimate government entities and do not bear the similar appearance as would be the case in a counterfeiting prosecution. Thank you, counsel. Your time has expired. Mr. Anderson, you reserve two minutes for rebuttal. Thank you, Your Honor. I just want to briefly point the court to page 252 of the appendix, lines 16 through 21. That's from the government's summation where the government said, quote, these documents, Jones's documents, appeared to be legitimate government purchase orders and GTRs, period. They looked official to the victims on the receiving end. Now that was an accurate summation of the uncontradicted testimony. Second, I want to note that the government says there would be a gap between the counterfeiting and the fictitious statute if my argument was to be given credence, but that's not true at all. I've already conceded that Jones's defense, if you were to raise it under section 472 of the counterfeiting statute, would likely fail for the same reasons that the defendants did in Howick, where they were discussing not the treasury warrants, but the gold and silver certificates. And third, the government noted that there is a scale, I think was the word, between fictitious and counterfeit, and that there's apparently some line that needs to be drawn in each case between where those things fall. Well, I think that indicates that the statute itself is ambiguous. And as I noted before, any ambiguity should be resolved in the defendant's favor. If the court has no further questions, then I'm prepared to stand on a brief. Well, do we need to draw a line between them? So lots of activity can be prosecuted under multiple statutes. So why does there need to be a distinction between counterfeit and false or fictitious? Well, because the statute itself in this case, especially in the context of all the other counterfeiting statutes, does have its ambiguity, false or fictitious, and focuses on the nature of the inquiry or the character of the security itself, meaning does this type of security exist? That's what the Morgan field court... Could you explain to me exactly what the ambiguity is? What word has two different meanings, one of which does not apply here and one of which would? I think it's the phrase to be an actual security is what I and the other courts have looked at except for the 11th Circuit. I'll grant that. But the other courts have looked at that and said, OK, we can't really tell exactly what that means. And so we look to the legislative history and the context in which this statute was drawn. And the context was that there were victims who were accepting completely fictitious documents for things that did not even exist, such as I think there was like Indonesian promissory bonds or something like that that Senator D'Amato noted. And that was why they passed the statute, because according to Senator D'Amato, prosecutors were saying that they could not prosecute people under the counterfeiting statute if they were presenting people with purported obligations. So how is that ambiguous? So if somebody offers an Indonesian promissory bonds and that is not a genuine financial instrument that purports to be an actual security, that is what the statute criminalizes. Why is that ambiguous? Because you can't tell exactly if that's what to be an actual security in the statute means. And that's why other courts have examined the statute's legislative history, because it wasn't precisely clear from the language of the statute itself what that meant, especially in the context of the other. I think you've just explained pretty clearly and persuasively what it means, right? So an Indonesian promissory bond is not an actual security. And so a document purporting to be a Indonesian promissory bond purports to be an actual security when it is in fact not. So I just... I'm not getting to it. Can you explain to me why that's ambiguous? My explanation of that was derived from the legislative history, which was itself examined because all these other courts of appeals have determined that the statute was ambiguous enough that they needed to look at the legislative history. Again, with the exception of the 11th Circuit. Are there any further questions? Thank you, counsel. We'll reserve the decision. That being the only case on this calendar, I will ask the clerk to adjourn court. Court is adjourned.